IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| SHIRLETTA SALES, <br> 459 Terri Court <br> Beavercreek, OH 45430 | * <br> * | CASE NO. 3:18-cv-00158 <br><br> (JUDGE WALTER H. RICE) |
| Plaintiff, | * | |
| vs | * | |
| I SUPPLY COMPANY <br> 1255 Spangler Road <br> Fairborn, OH 45324 | * <br><br> * | |
| And | * | |
| PARISI TRANSPORTATION COMPANY <br> 1255 Spangler Road <br> Fairborn, OH 45324 | * <br><br> * <br><br> * | **AMENDED COMPLAINT** |
| And | * | |
| MARIO PARISI <br> c/o I Supply <br> 1255 Spangler Road <br> Fairborn, OH 45324 <br> (In his corporate and individual capacities) | * <br><br> * <br><br> * | |
| And | * | |
| DAN STRAWN <br> c/o I Supply <br> 1255 Spangler Road <br> Fairborn, OH 45324 <br> (In his corporate and individual capacities) | * <br><br> * <br><br> * | |
| Defendants. | | |

1

Plaintiff Shirletta Sales hereby sets forth her claims against the above-named Defendants, jointly and severally, as follows:

## I. INTRODUCTION

Plaintiff Shirletta Sales brings this action seeking redress for wrongful termination and discrimination based on race, sex, retaliation, age and disability.

## II. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1343 and 1345. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—3 ("Title VII"), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, O.R.C. 4112.02, Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. §§ 216 and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FSLA; 29 U.S.C. Section 206(d); Section 7(b) of the Age Discrimination in Employment act of 1967, as amended (ADEA); 29 U.S.C. Section 626(b), which incorporates by reference Sections 16(c) and 17 of the FLSA; Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1864, as amended (Title VII), 42 U.S.C. Section 2000e-f; and Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII. This action is also authorized and instituted pursuant to Section 12 of Title I of the Civil Rights Act of 1991, 42 U.S.C. 1367, Ohio Revised Code Section 4112, et seq. and the common law of the State of Ohio.

2. Supplemental Jurisdiction of the Court is invoked pursuant to 28 U.S.C. 1367, as all state claims that are related to claims in the action within the Court's original jurisdiction and form part of the same case or controversy

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division, at Dayton, Ohio.

## III. EXHAUSTION OF REMEDIES

4. Plaintiff filed a timely Complaint with the United States Equal Employment Opportunity Commission and received notice of her right to sue on February 9, 2018. All conditions precedent to the institution of this lawsuit have been fulfilled.

## IV. PARTIES

1. Plaintiff Shirletta Sales was, at all times relevant to this action, a resident of the City of Beavercreek, in the County of Greene, in the State of Ohio.

2. Defendant I Supply Company is a family-owned and operated company, which at all times relevant to this action, operated in the City of Fairborn, in the County of Greene, in the State of Ohio.

3. Defendant Parisi Transportation Company is a for-profit corporation and the parent company of Defendant I Supply Company whose principal place of business was, at all times relevant to this action, in the City of Fairborn, the County of Greene, in the State of Ohio.

4. Defendant Mario Parisi is a co-owner of Defendants I Supply Company and Parisi Transportation Company whose place of business, at all times relevant to this Complaint, was in the City of Fairborn, the County of Greene, and in the State of Ohio.

5. At all times relevant to this action, Mario Parisi was acting in the course and scope of his employment or intentionally and outside the scope of his employment.

6. Defendant Dan Strawn was, at all times relevant to this action, an employee of Defendant I Supply and Plaintiff's direct supervisor, in the City of Fairborn, the County of Greene, and in the State of Ohio.

7. At all times relevant to this action, Defendant Dan Strawn was acting in the course and scope of his employment or intentionally and outside the scope of his employment.

## V. FACTS

8. On or about April 4, 2016, Defendant I Supply hired Plaintiff Shirletta Sales as its Human Resources Manager.

9. Plaintiff, who was 60 years of age at the time she was hired, was a highly educated and experienced Human Resources employee.

10. Plaintiff's predecessor, a white male, was given the title of Director, and on information and belief, performed the very same duties that were required of Plaintiff during her employment with Defendant, but with a more prestigious title and greater pay.

11. Plaintiff specifically requested Defendants to provide her with the title of Director and to pay her an equivalent salary to her white male predecessor, but Defendants refused, after merely changing the title of the position to manager.

12. During Plaintiff's term of employment with Defendants, I Supply was engaged in an industry affecting commerce and employed approximately 250 full time employees.

13. Defendant I Supply had 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar years.

14. Shortly after Plaintiff was hired she was misdiagnosed with blood cancer.

15. Subsequent testing revealed that Plaintiff had been misdiagnosed, but was, in fact, suffering from a severe form of chronic anemia.

16. Plaintiff was able to perform her job duties with accommodations, but attending follow up appointments was critical to controlling her chronic anemia.

17. Plaintiff promptly spoke with her supervisor, Defendant Dan Strawn, who was the Vice President of Human Resources and informed him about her health condition.

18. At or near the time of Plaintiff's employment with Defendant, she received an employee handbook which addressed Family Medical Leave Act (FMLA) leave,

19. After Plaintiff had accumulated sufficient hours to qualify for FMLA leave, she again approached Defendant Strawn and requested FMLA leave for which she was qualified, but which Defendants did not approve.

20. Customarily, an announcement is made introducing a new manager.

21. In this case, after a delay and with Plaintiff's prompting, Defendant Strawn finally formally introduced Plaintiff, and asked Defendant I Supply's team members to meet with her.

22. The purpose of the meetings with Defendant I Supply's team members was to help Plaintiff understand and analyze the immediate needs of Defendant I Supply's departments to enable her to provide appropriate assistance to them.

23. Plaintiff scheduled meetings with all of Defendant I Supply and Parisi Transportation's managers.

24. All of the meetings occurred with the exception of Transportation Department managers, Alan Collins and Ralph Eckes, who did not attend.

25. Alan Collins and Ralph Eckes were both managers and supervisors employed by Defendants I Supply and Parisi Transportation at all times relevant to this Complaint.

26. Plaintiff made multiple attempts to reschedule these meetings with Transportation Department managers, which Collins and Eckes still refused to attend.

27. When Defendant I Supply/Parisi Transportation's managers, Alan Collins and Ralph Eckes began addressing Plaintiff with racial slurs, she promptly told these managers that their comments were offensive and unwelcome.

28. During management meetings, Plaintiff was addressed as "girl" to which she voiced objection, and was subjected to unwelcome racially and sexually charged discriminatory behavior and comments.

29. Management meetings occurred in a white male dominated atmosphere in which Plaintiff was, at times, prevented from voicing her opinions or concerns, unlike similarly situated white counterparts.

30. When the offensive racial slurs, behavior and comments continued, Plaintiff advised her supervisor, Dan Strawn, of these comments and he failed to take any remedial, corrective or disciplinary actions.

31. The offensive racial slurs continued despite Plaintiff's complaints, both written and oral, concerning them.

32. Defendant I Supply/Parisi Transportation's managers Alan Collins and Ralph Eckes began calling for Plaintiff to be fired.

33. Despite the treatment Plaintiff was receiving, she performed all of her job functions satisfactorily and even received commendations from her superiors for her excellent job performance.

34. Defendants I Supply/Parisi Transportation employees Alan Collins and Ralph Eckes maliciously and intentionally engaged in a retaliatory campaign designed to have Plaintiff removed from her position by nitpicking her performance and charging her with performance-related issues involving safety over which they—not she—were responsible for exercising control.

35. Defendants' employees Alan Collins and Ralph Eckes refused to discuss issues with Plaintiff, but instead, repeatedly elevated them to Defendant Strawn without her knowledge.

36. Plaintiff asked Defendant Strawn for a meeting with employees Collins and Eckes to set the stage for a more productive working relationship, but Defendant Strawn never scheduled the meeting.

37. Defendants' employees Alan Collins and Ralph Eckes continued to refuse to attend management team meetings, and then complained of issues that the meetings were designed to resolve with their cooperation.

38. Defendants' employees Alan Collins and Ralph Eckes refused to work with Plaintiff directly, which was not the custom for non-minority employees.

39. Plaintiff on numerous occasions complained to Defendant Dan Strawn regarding the offending employees discriminating, retaliatory and offensive behavior.

40. Plaintiff became aware from a previous Human Resources employee that Defendant I Supply had a culture of discrimination against racial minorities and discrimination based on gender and pay.

41. Plaintiff, in her position, began to realize that Black warehouse employees were given unpopular shifts, were forced to work longer hours than their white counterparts, and suffered discrimination.

42. When these employees brought these issues to Plaintiff's attention, she recommended remedial action which Defendants I Supply and Parisi Transportation never took.

43. Plaintiff was Defendant's only Black manager and the only female manager.

44. Plaintiff's performance was more more intensely monitored and judged on a much harsher standard than that of similarly situated non-minority employees.

45. Plaintiff personally observed that non-minority employees' serious misconduct went unaddressed, whereas conduct of minority employees suffered more severe discipline for conduct that was of the same or lesser seriousness.

46. Plaintiff also had a serious health condition, fibromyalgia, which was related to her inability to walk distances.

7

47. One of Defendants' managerial employees observed her difficulty in walking and ridiculed her, referring to her as an "old lady."

48. At that time, Plaintiff had extreme difficulty walking from the trailer where she was headquartered to Defendant's main office where she often had to perform job functions and where the woman's restroom was located.

49. Plaintiff asked Defendant Strawn for an accommodation which consisted of allowing her to perform work into an empty space in the main office building to accommodate her inability to walk.

50. Defendants denied Plaintiff the accommodation of allowing her to utilize an empty space in Defendants' main building.

51. On or about April 13, 2017, Plaintiff was scheduled to be absent from work for a pre-scheduled doctor's appointment.

52. Had Plaintiff missed this appointment, she believed would have had to wait approximately a month to reschedule the appointment and to receive medication that was vital to her maintaining her serious health condition.

53. On or about April 12, 2017, Defendant Mario Parisi confronted Plaintiff with alleged, but untrue, performance-related issues involving Alan Collins.

54. Plaintiff's performance was scrutinized and criticized much more severely than non-minority and male employees.

55. Alan Collins on or about April 12, 2017, shouted angrily at Plaintiff concerning issues over which she had no control.

56. Before leaving for her doctor's appointment on or about April 13, 2017, Plaintiff's supervisor, Defendant Dan Strawn, provided her with a Corrective Action notice, which she reviewed.

57. The Corrective Action notice Plaintiff received was a document that contained out-of-context, inaccurate representations based on a sham investigation without any input from Plaintiff which was instigated by Defendant I Supply/Parisi Transportation's employees Alan Collins and Ralph Eckes, whom she had accused of discriminatory conduct.

58. Defendant Parisi advised her that employees Collins and Eckes had told him she had berated him, which was an untrue allegation.

59. Plaintiff informed Defendant Parisi that she had a very important doctor's appointment, needed to get her medication and that she would return.

60. Defendant Parisi, in turn, sternly demanded that Plaintiff remain.

61. By this point, the atmosphere at Defendant I Supply/Parisi Transportation had become so permeated with discrimination and hostility based on age, race and disability that it was utterly intolerable.

62. Plaintiff suffered a constructive termination from her position.

63. On or about April 17, 2017, Plaintiff was told that she could remain in her position if she signed a document that was filled with untruthful statement.

64. When she refused to sign this document, her position with Defendants I Supply/Parisi Transportation was terminated.

65. Plaintiff has sought employment since her termination, but has not been hired.

66. Plaintiff has suffered emotional and mental distress, humiliation and loss of reputation as the direct and proximate result of Defendants' actions and inaction.

67. As the direct and proximate result of Defendants' actions and inaction, Plaintiff has suffered injury and damages and anticipates suffering injury and damages into the future.

## VI. CAUSES OF ACTION

### COUNT I

### (FMLA VIOLATIONS)
### (All Defendants)

68. All preceding paragraphs are incorporated herein as if fully rewritten.

69. Plaintiff was an eligible employee who was entitled to FMLA leave.

70. Defendant employed well over 20 employees and was an employer as defined by FMLA provisions.

71. On or about April 4, 2017, Plaintiff provided Defendants with notice and a qualifying reason for her need for FMLA as the result of a serious health condition.

72. Defendants' I Supply/Parisi Transportation Company's handbook outlined the FMLA benefit to which Plaintiff was entitled.

73. Defendants denied Plaintiff of the FMLA benefit to which she was entitled.

74. Defendants further retaliated against Plaintiff based on her request for FMLA leave, which resulted in on-the-job discrimination and ultimately resulted in the termination of her employment.

75. As the direct and proximate result of Defendants' actions and inaction, Plaintiff has suffered injury and damages and anticipates suffering injury and damages into the future.

### COUNT II
### RACIAL DISCRIMINATION (DISPARATE TREATMENT)
[Racial and Sexual Discrimination (Disparate Treatment) pursuant to Ohio Revised Code Section 4112.02 (A), et. seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—5(f)(1); and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a]
### (Defendants I-Supply and Parisi Transportation)

76. All preceding paragraphs are incorporated herein as if fully rewritten.

77. Plaintiff, as a female African-American citizen, is the member of a protected class.

78. Plaintiff was qualified for her position.

10

79. Plaintiff was subjected to an adverse job action through discriminatory actions and Defendants' termination of her employment.

80. Defendants subjected Plaintiff to less favorable treatment in the terms and conditions of her employment than non-minority employees have received based upon her race and gender.

81. Defendants treated similarly-situated non-minority employees, who were involved in more egregious conduct than that with which Plaintiff was charged, more favorably than Plaintiff, as detailed within the body this complaint.

82. Plaintiff was subjected to more severe and punitive disciplinary action than Defendants' similarly situated non-minority employees.

83. Discrimination directed toward Plaintiff was motivated by, and based upon, on her race and gender.

84. The discrimination directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

85. Defendants were aware of the severe, discriminatory actions to which Plaintiff was subjected by their employees who were acting within the course and scope of their employment when the discrimination occurred.

86. Defendants I Supply and Parisi Transportation subjected Plaintiff to severe, discriminatory actions by ratifying their managers' discriminatory conduct and approving Plaintiff's unlawful employment termination.

87. Defendants were aware, or should have been aware, of the racial and sexual discrimination Plaintiff suffered, yet failed to take immediate and appropriate corrective action.

88. Defendants are charged with knowledge of the discriminatory conduct of their employees, as it was committed by Defendants' managers and supervisors.

89. As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and damages.

## COUNT III
## RACIAL DISCRIMINATION – HOSTILE WORK ENVIRONMENT
[Pursuant to Ohio Revised Code Section 4112.02 et. seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—2(a)(1); and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a]
**(Defendants I Supply/Parisi Transportation)**

90. All preceding paragraphs are incorporated herein as if fully rewritten.

91. Plaintiff, as a female African American citizen is a member of a protected class.

92. Plaintiff was subjected to unwelcome harassment.

93. The unwelcome harassment to which Plaintiff was subjected was based upon her race and gender.

94. The harassment to which Plaintiff was subjected created a hostile work environment.

95. The discrimination directed toward Plaintiff was conscious, purposeful, intentional, malicious, or sufficiently reckless to warrant an award of punitive damages.

96. The discrimination directed toward Plaintiff was sufficiently severe and pervasive to create a work environment that a reasonable person would find to be hostile and abusive.

97. Defendants were aware of the severe and pervasive discriminatory actions to which Plaintiff was subjected by Defendants' Supervisors, who were acting within the course and scope of their employment when the discrimination occurred.

98. Defendants were, or should have been aware, of the racial discrimination, yet failed to take immediate and appropriate corrective action.

99. Defendants are charged with knowledge of the discriminatory conduct of its employees, as it was committed by Defendants' managerial and supervisory employees.

100. As a direct and proximate result of Defendant's actions, Plaintiff suffered injury and damages and Defendants are liable for Plaintiff's injury and damages.

## COUNT IV
## RETALIATION

**(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e—3 ("Title VII"); Section 102 of the Civil Rights Act of 1991; R.C. 4112.02(J), R.C. 4112.02, et. Seq. )**
**(Defendants I-Supply and Parisi Transportation)**

101.    Each of the foregoing paragraphs above is incorporated herein as if fully rewritten.

102. Defendants had statutory duties that obligated Defendant not to discriminate in any manner against Plaintiff because of her opposition to any unlawful discriminatory practice.

103. Plaintiff participated in protected activities by opposing discrimination that she was suffering on the job.

104. Defendant knew about Plaintiff's exercise of protected activities.

105. Defendant took materially adverse employment actions against Plaintiff, including, but not necessarily limited to, discriminating and retaliating against her by accusing her of failing to meet non-specified, non-published performance standards that were not imposed on other employees, and by wrongfully or constructively terminating her employment in retaliation for her protected activities.

106. The retaliatory harassment to which Defendant subjected Plaintiff was severe and pervasive.

107. Defendant's supervisors' and managers' unwelcome retaliatory discrimination against Plaintiff was committed maliciously, callously, intentionally, and recklessly, justifying punitive damages.

108. There was a causual connection between Defendant's retaliatory actions and Plaintiff's protected activity.

109. As the direct and proximate result of Defendants' actions and inaction, Plaintiff has suffered injury and damages.

## COUNT V
## AGE DISCRIMINATION
## (AGE DISCRIMINATION IN EMPLOYMENT ACT 42 U.S.C. §12112. 4112.02(A))
## (Defendants I-Supply and Parisi Transportation)

110. Each of the foregoing paragraphs above is incorporated herein as if fully rewritten.

111. Plaintiff's date of birth is January 21, 1955, making her over 40 years of age and a qualifying protected employee.

112. Plaintiff was qualified for the position which she held with Defendant.

113. Younger employees were treated more favorably than Plaintiff.

114. Defendants were aware of the severe and pervasive discriminatory actions to which Plaintiff was subjected by Defendants' Supervisors, who were acting within the course and scope of their employment when the age discrimination occurred.

115. Defendants were, or should have been aware, of the age discrimination, yet failed to take immediate and appropriate corrective action.

116. Defendants are charged with knowledge of the discriminatory conduct of its employees, as it was committed by Defendants' managerial and supervisory employees.

117. Plaintiff suffered adverse employment actions based on her age having been constructively terminated and then terminated from her position.

118. On information and belief, following her termination, Plaintiff's position was filled by a substantially younger person.

119. As the direct and proximate result of Defendants' actions and inaction, Plaintiff has suffered injury and damages.

## COUNT VI
## DISABILITY DISCRIMINATION
### (Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII.
### Defendants I Supply and Parisi Transportation

120. Each of the foregoing paragraphs above is incorporated herein as if fully rewritten.

121. Plaintiff suffered from severe physical impairments, including fibromyalgia, an inability to walk long distances and chronic and severe anemia.

122. Plaintiff's life activities of consisting of walking, standing and working a non-modified work schedule were substantially limited by her physical impairments.

123. Defendants were aware of Plaintiffs' disabilities.

124. Plaintiff was disabled.

125. Adverse employment actions were taken Defendants, at least in part, because Plaintiff was (disabled).

126. Though disabled, Plaintiff could safely and substantially perform the essential functions of her position.

127. As the direct and proximate result of Defendants' actions and inaction, Plaintiff has suffered injury and damages.

## COUNT VII
## EQUAL PAY ACT VIOLATIONS
### (Defendants I Supply and Parisi Transportation)

128. Each of the foregoing paragraphs above is incorporated herein as if fully rewritten.

129. Defendants paid different wages to employees of opposite sexes for equal work on jobs in which the performance required equal skill, effort and responsibility and which were performed under similar working conditions.

130. Specifically, Defendants paid Plaintiff's predecessor a higher wage for equal work on jobs in which the performance required equal skill, effort and responsibility and which were performed under similar working conditions.

131. As the direct and proximate result of Defendants' actions and inaction, Plaintiff has suffered injury and damages.

## VII. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays the Court to grant her the following relief:**

Order Defendants to make Plaintiff whole by providing compensatory and punitive damages, including back pay and benefits with prejudgment interest, in amounts to be determined at trial;

Order Defendants to make Plaintiff whole by providing her with compensation for past and future non-pecuniary losses related to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights in an amount to be determined at trial;

Order defendants to make Plaintiff whole by Ordering Defendants to pay punitive damages in an amount to be determined at trial;

Grant such other and further relief as the Court deems necessary and equitable.

## JURY DEMAND

Plaintiff demands a jury trial on all questions of fact raised within this Complaint.

Respectfully submitted,

*Shirletta Sales*
Plaintiff Shirletta Sales
Pro Se

15